AUSA: Craig Weier  Telephone: (313) 269-6497
Special Agent: Miguel Colon  Telephone: (313) 737-7447

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.

TAMARA SMITH

Case No.  Case: 2:20−mj−30493
Assigned To : Unassigned
Assign. Date : 11/24/2020
USA V. SMITH (CMP)(CMC)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 2018__ in the county of __Wayne and elsewhere__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028A | Aggravated identity theft |
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Miguel Colon, Special Agent, OIG-U.S. Department of Labor
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: November 24, 2020

_____
Judge's signature

City and state: Detroit, MI

R. Steven Whalen, U.S. Magistrate Judge
*Printed name and title*

Save    Print

# AFFIDAVIT

I, Miguel Colon, being duly sworn, depose and state that:

## I.  INTRODUCTION

1. I am a Special Agent of the U.S. Department of Labor, Office of Inspector General, and have been so employed since December 2017. I previously served as an Investigator with the Department of Labor, Wage and Hour Division. I am currently assigned to the Homeland Security Investigations' Document and Benefit Fraud Task Force located in Detroit, MI. I have conducted numerous investigations involving identity theft, labor, financial and unemployment insurance fraud schemes. I have graduated from the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC).

2. During my years at the Department of Labor, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During this time, I have been either the lead agent or supporting agent on several investigations involving criminal schemes targeting the unemployment insurance (UI) program through the filing of false or fictitious UI claims. Based on my direct personal experience with these cases, I have become familiar with the methods that criminals use to attack and exploit the UI systems as well as the

1

criminals' reliance on the use of email and other internet or online tools and systems to facilitate that fraud.

3. As a result of my participation in this investigation, I believe there is probable cause to believe that Tamara Lee Smith ("SMITH"), has committed federal crimes, including but not necessarily limited to mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A,. This affidavit is submitted in support of an application for the issuance of a criminal complaint and an arrest warrant for SMITH.

4. The facts set forth in this affidavit include information that has been developed in furtherance of this investigation, as well as information provided by the New York State Department of Labor, the Massachusetts Department of Unemployment Assistance and the Washington State Employment Security Department. Because this affidavit is being submitted for the sole purpose of supporting an application for a criminal complaint, it does not necessarily contain all the facts discovered in the course of this investigation.

## II.  UNEMPLOYMENT INSURANCE BACKGROUND

5. The Social Security Act of 1935 initiated the federal and state unemployment insurance system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is twofold: first, to lessen the effects of unemployment through cash payments made

directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. In Washington State, the UI system is administered by the Employment Security Department (ESD). New York and Massachusetts administer their UI programs through analogous state run agencies. Regardless of state, the U.S. Department of Labor funds each of the respective state agency's administrative costs surrounding UI, including salaries, office expenses, and computer equipment.

6. State unemployment systems and benefits are joint state and federal enterprises administered by the State Workforce Agency **(SWA)** of a given state and largely financed by taxes on private employers located in that state. When state unemployment benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. Department of Labor.

7. Normally (in the absence of fraud), an unemployed worker initiates an unemployment claim **(UI claim)**. This can be accomplished by submitting a claim in person, over the telephone, or on the Internet. Currently, the overwhelming majority of UI claims are filed online through a SWA website. In order to be eligible for UI benefits, the worker must be a resident of the state to which the application is made, and the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of unemployment benefits that a UI claimant might be eligible for depends on a

variety of factors, including but not limited to the length of his or her previous employment and the amount of wages he or she earned.

8. The SWA will either approve or reject a UI claim based on the application made by the unemployed worker. If the SWA approves a UI claim, the claimant is required to re-certify the claim via telephone or Internet at various times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work. One way in which unemployment benefits are provided to a claimant is through the use of a debit card, which is mailed to the claimant through the U.S. Postal Service. The unemployment benefits are loaded onto the debit card electronically, and additional benefits are loaded onto the card electronically at intervals thereafter.

9. In an effort to prevent and otherwise inhibit fraud, the SWAs capture certain data surrounding the interaction between an individual and the UI system. Each time a claim is accessed in the system, it creates a digital footprint of sorts. Although states utilize their own unique systems, many times the data that is collected includes the dates, times, Internet Protocol (**IP**) address, and Media Access Control (**MAC**) address associated with a device accessing a claim. The SWA systems tie this information to the user-entered information captured to facilitate the claim (i.e. name, address, social security number, bank account numbers, bank routing numbers, etc.). It is through the analysis of this data that

4

the SWAs and investigating agents can identify fraudulent trends and tendencies associated with certain claims.

### III.   PROBABLE CAUSE

10.   This investigation was predicated upon information provided to this office by the New York State Department of Labor (NYSDOL). On April 30, 2018, NYSDOL contacted federal investigators reporting that Internet Protocol (IP) address **68.60.201.213** filed employer documentation with the NYSDOL.  A NYSDOL investigator indicated that a suspected fictitious employer was registered with the NYSDOL under the name "Preferred Physical Therapy" (PPT) on April 18, 2018, from the Michigan IP address **68.60.201.213.**  A fictitious employer scheme is created when an individual or a group creates a company existing on paper only supported by the creation of false documentation to include employee paystubs, W2s, quarterly tax reports, annual tax returns, and other documentation to give the appearance the company is legitimate.  The criminals perpetrating this type of fraud, file unemployment insurance benefit claims using the "fictitious" company name which triggers benefits to be paid by the state.

11.   On February 7, 2018, the fictitious employer, PPT, listed 10 employees (potential claimants) on their Quarterly Combined Withholding, Wage Reporting & Unemployment Insurance Return.  NYSDOL flagged PPT because PPT did not pay any unemployment insurance taxes and also because all of the 10 "employees"

5

had Social Security Numbers originating in the Midwest and not the Northeast, which was highly unusual. On February 28, 2018, a declination letter from the NYSDOL was mailed via U.S. Postal Service to the registered address of PPT.

12. On May 3, 2018, NYSDOL determined that the Internet Service Provider (ISP) for IP address 68.60.201.213 was COMCAST. COMCAST identified the subscriber for the IP address as Tamara Smith and reported SMITH's address as 4213 Chrysler Drive Apartment C, Detroit, Michigan, 48201. The ISP reported that IP Address 68.60.201.213 was disconnected on April 19, 2018 (shortly after the fictitious employer was registered). The email associated with the subscriber was TAMARAS566@comcast.net.

13. I am aware of an individual by the name of Tamara Smith, who previously engaged in significant unemployment insurance fraud within the Eastern District of Michigan. In 2014, SMITH was sentenced to serve 57 months in Federal Prison, as a result of a fictitious employer unemployment insurance fraud scheme where she was convicted of stealing over $336,000. The unemployment insurance fraud scheme she was convicted of appeared similar to reports from the NYSDOL.

14. I am aware that agents from this office led the previous investigation and on May 3, 2018, contacted the U.S. Probation Department to determine if SMITH had been released from prison. It was determined that SMITH was released from prison in 2016, after completing mandated programs while in custody. Her

6

probation officer indicated that she lived at 2714 Peachcrest St., Ypsilanti, MI, 48198. The probation officer had no knowledge that SMITH resided at 4213 Chrysler Drive Apartment C, Detroit, MI, 48201.

15. On May 4, 2018, agents from this office conducted surveillance at 4213 Chrysler Drive, Detroit, MI, 48201, and witnessed a 2010 Chevrolet Malibu, MI license plate DUL5994, located in the apartment complex parking lot. A commercial database search revealed this vehicle was registered to SMITH.

16. On May 7, 2018, the NYSDOL received information from the Massachusetts Department of Unemployment Assistance (MDUA) that the same IP address, **68.60.201.213**, filed four claims on a suspected fictitious employer named "Nurses R Us." The claims were flagged and not paid out to the claimants due to suspicious activity under MDUA's claim crossmatch, where they review claimant information and the time criteria of employer filings against employee claims. The MDUA deemed their activity to be suspicious and froze the unemployment insurance claims. The potential loss for this unemployment insurance claim scheme in Massachusetts was $76,620.

17. On May 14, 2018, a review of commercial database information revealed that SMITH was listed as an occupant of 4213 Chrysler Drive Apartment C, Detroit, MI, 48201. The database also revealed that SMITH had utilities, including a Verizon account registered at this address.

7

18. On May 14, 2018, I conducted surveillance at 4213 Chrysler Drive, Detroit, MI, and witnessed the Chevrolet Malibu, MI license plate DUL5994, parked in the parking lot adjacent to Apt C.

19. On May 15, 2018, I conducted surveillance at 2714 Peachcrest Ypsilanti, MI, 48198. During surveillance, there was no indication that SMITH resided at this residence.

20. On May 15, 2018, I conducted surveillance at 4213 Chrysler Drive, Detroit, MI, and witnessed SMITH arrive at the apartment building in the Chevrolet Malibu, MI license plate DUL5994 and enter Apartment C.

21. On May 22, 2018, I conducted an interview of Victim 1, listed as an employee for PPT in the employer Quarterly Combined Withholding, Wage Reporting & Unemployment Insurance Return with NYSDOL. Victim 1 stated that she never worked for PPT nor did she provide her information to anyone for the purpose of filing unemployment insurance claims, nor did she know SMITH.

### Execution of Search Warrant at 4213 Chrysler Drive, Apt C

22. On June 11, 2018, I obtained a federal search warrant to search the residence at 4213 Chrysler Drive, Apartment C, in Detroit. On June 12, 2018, agents from DOL-OIG, the Detroit Police Department and MUIA executed the search warrant.

23. Agents seized significant evidence of identity theft, unemployment insurance fraud and mail fraud at the subject premises. Also seized during the execution of the search warrant were a laptop and two cell phones belonging to SMITH.

24. During the execution of the search warrant, two Regulatory Agents from the MUIA and I conducted a non-custodial interview of SMITH, to which she consented. During the initial part of the interview, which was consensually recorded, SMITH admitted to creating fraudulent check stubs for friends seeking to apply for apartments or vehicles in order to show income. SMITH also stated that the agents searching the apartment were going to find PII that belonged to other people. When asked about any UI schemes, SMITH stated that she would not discuss it while being recorded. The affiant terminated the recording and continued to interview SMITH. Subsequently, SMITH admitted to filing UI claims in Iowa and Washington State and denied filings claims in New York, Massachusetts or Michigan. SMITH stated she filed the claims using fictitious employers "Comforting Hands" and "Preferred Physical Therapy". SMITH denied using the fictitious employer "Nurses R' Us" to file claims. Smith stated that she believed she received about $35,000 to $40,000 in fraudulent UI claims from Washington State.

25. During the search of the subject location, agents found a notebook and documents containing names and social security numbers of 45 individuals. Of those found, 35 are linked to fraudulent UI claims in multiple states based on information provided by the State Workforce Agencies, which I have reviewed. Also found in the notebook were notes regarding multiple fictitious employers to include "Nurses R' Us" and "A Comforting Hand."

26. A review of the data found on the laptop seized during the execution of the search warrant on June 12, 2018, showed multiple Google.com searches for unemployment insurance information for the states of Iowa, Massachusetts, New York and Washington State. Also found were multiple site visits to the Washington State ESD. Access and registration for multiple claimants were found in the browser history.

27. A review of the data found on a cell phone seized during the execution of the search warrant on June 12, 2018, showed multiple photos of handwritten notes of PII for individuals not related or associated to SMITH. I provided the PII to Washington ESD which confirmed that multiple PII entries were of victims of UI fraud in Washington State. In addition, a screenshot of an email related to fictitious employer "A Comforting Hand" was found.

28. On June 21, 2018, I contacted the Washington State ESD and provided the information recovered from SMITH's residence. An investigator from the ESD

provided me information regarding fraudulent claims associated with names and social security numbers that were found in SMITH's possession, as well as the fictitious employers associated with SMITH. The ESD investigator also provided me with fictitious employer wage reports, employee claims, KeyBank transactions and ATM footage of SMITH making withdrawals from ATM's, located in Ypsilanti, Michigan, from bank accounts associated with fraudulent UI claims. To date, SMITH is linked to 18 claimants totaling $86,223 in fraudulent UI claims in Washington State.

## UI Account in Victim J.H.'s Name

29.    According to Washington ESD investigators I spoke with, who have reviewed the relevant UI claims documentation, "claimant" J.H. filed for UI on September 3, 2017. According to ESD, ESD sends a determination letter to the address provided by the claimant and the business the claimant is claiming to have been fired from. These letters are sent the next business day following the day the claim is initially filed. According to ESD, if the claimant chooses to have UI benefits deposited onto a ESD provided debit card, that card is provided by KeyBank and is also mailed the next business day following the day the claim is filed. In addition, two separate determination and debt letters were mailed, via USPS, to the address on J.H.'s claim on November 29, 2017 and March 21, 2018. J.H.'s claim was adjudicated and approved by ESD. Between September 16, 2017

and February 10, 2018, ESD deposited $9,746 into a debit account established (by ESD) in J.H. name. ESD was able to obtain ATM footage from 8 separate withdrawals made from this debit account between October 13, 2017 and December 5, 2017 from ATMs located in Ypsilanti near the SMITH's residence. In the footage, an individual strongly resembling SMITH is shown withdrawing funds. On March 20, 2018, J.H. filed a victim statement with WA ESD stating that she had not received any UI benefits, she had not filed a UI claim, and she had not given permission to anyone else to file a UI claim on her behalf.

30. A photo of J.H.'s PII was retrieved from a cell phone seized during the search of SMITH's residence described above.

## UI Account in Victim D.G.'s Name

31. According to Washington ESD investigators I spoke with, who have reviewed the relevant UI claims documentation, "claimant" D.G. filed for UI on September 3, 2017. According to ESD, if the claimant chooses to have UI benefits deposited onto a ESD provided debit card, that card is provided by KeyBank and is also mailed the next business day following the day the claim is filed. In addition, four separate determination and debt letters were mailed, via USPS, to the address on D.G.'s claim between November 1, 2017 and February 19, 2018 D.G.'s claim was adjudicated and approved by ESD. Between September 16, 2017 and February 3, 2018, ESD deposited $11,459.50 into a debit account established (by

12

ESD) in D.G.'s name. ESD was able to obtain ATM footage from 11 separate withdrawals made from this debit account between September 22, 2017 and December 5, 2017 from ATMs located in Ypsilanti near the SMITH's residence. In the footage, an individual strongly resembling SMITH is shown withdrawing funds.

### UI Account in Victim D.R.'s Name

32. According to Washington ESD investigators I spoke with, who have reviewed the relevant UI claims documentation, "claimant" D.R. filed for UI on September 3, 2017. According to ESD, if the claimant chooses to have UI benefits deposited onto a ESD provided debit card, that card is provided by KeyBank and is also mailed the next business day following the day the claim is filed. In addition, two separate determination and debt letters were mailed, via USPS, to the address on D.R.'s claim on November 29, 2017 and February 19, 2018. D.R.'s claim was adjudicated and approved by ESD. Between September 16, 2017 and February 10, 2018, ESD deposited $10,648 into a debit account established (by ESD) in D.R.'s name. ESD was able to obtain ATM footage from 5 separate withdrawals made from this debit account between September 22, 2017 and October 17, 2017 from ATMs located in Ypsilanti near the SMITH's residence. In the footage, an individual strongly resembling SMITH is shown withdrawing funds.

A photo containing D.R.'s PII was retrieved from a cell phone seized during the search of SMITH's residence described above. <u>UI Account in Victim S.B.'s Name</u>

33. According to Washington ESD investigators I spoke with, who have reviewed the relevant UI claims documentation, "claimant" S.B. filed for UI on September 3, 2017. According to ESD, if the claimant chooses to have UI benefits deposited onto a ESD provided debit card, that card is provided by KeyBank and is also mailed the next business day following the day the claim is filed. In addition, two separate determination and debt letters were mailed, via USPS, to the address on S.B.'s claim on November 29, 2017 and February 19, 2018. S.B.'s claim was adjudicated and approved by ESD. Between September 16, 2017 and November 18, 2017, ESD deposited $5,060 into a debit account established (by ESD) in S.B.'s name. ESD was able to obtain ATM footage from 10 separate withdrawals made from this debit account between September 22, 2017 and December 5, 2017 from ATMs located in Ypsilanti near the SMITH's residence. In the footage, an individual strongly resembling SMITH is shown withdrawing funds.

34. S.B.s Key Bank UI debit card was retrieved during the search of SMITH's residence described above.

## UI Account in Victim K.J.'s Name

35. According to Washington ESD investigators I spoke with, who have reviewed the relevant UI claims documentation, "claimant" K.J. filed for UI on September 3, 2017. According to ESD, if the claimant chooses to have UI benefits deposited onto a ESD provided debit card, that card is provided by KeyBank and is also mailed the next business day following the day the claim is filed. In addition, two separate determination and debt letters were mailed, via USPS, to the address on K.J.'s claim on November 3, 2017 and February 14, 2018. K.J.'s claim was adjudicated and approved by ESD. Between September 16, 2017 and February 4, 2018, ESD deposited $9,819.50 into a debit account established (by ESD) in K.J.'s name. ESD was able to obtain ATM footage from 8 separate withdrawals made from this debit account between October 13, 2017 and December 5, 2017 from an ATM located near the SMITH's Ypsilanti residence. In the footage, an individual strongly resembling SMITH is shown withdrawing funds.

36. The ESD provided the affiant with a spreadsheet obtained from KeyBank revealing that three separate phone numbers called KeyBank in order to make changes to the bank account information of the aforementioned UI claims. A commercial database search shows that these three numbers are associated with SMITH.

37. In addition to the aforementioned claimants, UI claims were filed and approved by ESD for an additional 13 claimants associated with SMITH. These additional claimants were filed under fictitious employers associated with SMITH. Also, SMITH was found in possession of names and social security numbers of 12 of these additional claimants as well as browser and internet activity listing their names or filing UI claims on the ESD website.

## V. Conclusion

38. There is probably cause to believe that Tamara Lee Smith has committed aggravated identity theft, in violation of 18 U.S.C. § 1028A, and wire fraud, in violation of 18 U.S.C. § 1343, in furtherance of an unemployment insurance fraud scheme.

_____
Miguel A Colon
Special Agent, OIG
U.S. Department of Labor

Sworn to before me and signed in my presence
and/or by electronic means.

Date: November 24, 2020

_____
R. STEVEN WHALEN
United States Magistrate Judge